**IN THE UNITED STATES DISTRICT COURT**
**FOR THE _____ DISTRICT OF _____**
**_____ DIVISION**

)
)
)
)
)

J. Y. P. ,

    **Plaintiff,**

**VS.**

**A2B CARGO LOGISTICS, INC.,**

**A2B CARGO, INC., and COLEMAN**

**STRACHAN,**

    **Defendants.**

_____

| FILED |
|---|
| JAMES J.VILT JR, CLERK |
| 6/9/21 |
| U.S. DISTRICT COURT WESTERN DISTRICT OF KENTUCKY |

**Complaint for Civil Case**

**Case No.** 5:21-CV-71-TBR

**Jury Trial Demanded**

## COMPLAINT FOR CIVIL CASE ALLEGING NEGLIGENCE

### (28 U. S. C. 1332; Diversity of Citizenship)

Comes Now, Plaintiff, J. Y. P, (Minor-Child) Pro Se, by way of Gregory Peet, his
(Farther) and make a claim for personal injurys, alleging negligence and states the
following in support:

**I.**

1

## The Parties to This Complaint

**The Plaintiff Address**

1. J. Y. P. is a minor-child that lives with his parents Gregory and Audrea Peet at, 311 Lee Ave., Sikeston, Missouri, 63801 - Phone: 573-270-6081 - email: peety5252 @gmail.com

**The Defendant(s) Address**

2. A2B Cargo Logistics, Inc., 12161 S. Central A venue, Suite 212, Alsip, IL 60803.

3. A2B Cargo Inc., 1600 Dixie Highway, Suite #1, Markham, Illinois, 60428.

4. Coleman Strachan, 711 Queen Street, Sharpsburg, North Carolina, 27878.

## II.

## Jurisdiction 28 U. S. C. 1332-Diversity of Citizenship and Venue

**The Plaintiff Citizenship**

5. J. Y. P., is a natural person and is a citizen of the State of Missouri.

**The Defendant(s) Citizenship**

6. The defendant, A2B Cargo Logistics, Inc., is incoporated under the laws of the State of Illinois, and has its principal place of business in the State of Illinois.

7. The defendant, A2B Cargo, Inc., is incoporated under the laws of the State of Illinois, and has its principal place of business in the State of Illinois.

8. Coleman Strachan is a natural person and is a citizen of the State of North Carolina.

**The Amount in Controversy**

$ 1,075,000.00 One Million Seventy Five Thousand Dollars

## VENUE

8(a) Venue is appropriate because the tractor trailer collision giving rise to this lawsuit

occurred in Kuttawa, Lyon County, Kentucky, on June 28, 2019.

## III

## Statement of Facts

9.  On June 28, 2019, I Gregory Peet, my wife Audrea Peet, (3) three year old sons at this

time, O. J. P. and (2) two year old son at this time, J. Y. P. were traveling on the

(Interstate-Eastbound) I-24 East in Kentucky going back to our home in Oak Grove,

Kentucky from visiting family in Sikeston, Missouri.

10. My wife Audrea Peet, was driving with her seat belt securely fasten, I (Gregory Peet),

was in the front passenger seat with my seat belt securely fasten, O. J. P was in his car

seat on the rear driver side back seat directly behind my wife with his seat belt securely

fasten and J. Y. P. was in his car seat on the rear passenger side back seat directly behind

me with his seat belt securely fasten.

11. At all times Audrea was observing the posted speed limit 70 mph and fully aware of

3

the surrounding traffic.

12. As we came over a hill approximately at the 51 mm on I-24 East in, (Lyon County) Kuttawa, Kentucky we notice that both the right lane and left lane were both at a dead stop.

13. Audrea safely maneuver the F-150 (Enterprise Rental Truck) we were driving to a complete stop remaining in the right side lane.

14. A white Chev truck was directly beside us in the left lane, there was other vehicels behind us in both lanes.

15. After approximately 10 minutes went by we were still stopped, I turn around to check on my sons and I seen a 18 wheeler with a trailer attached (later driver was I.D. as the defendant Coleman Starchan) coming off the hill behind us at a very high rate of speed.

16. I immediately turn to my wife and said we are about to get hit from behind.

17. Audrea never heard what I said.

18. I then turn to my right and oserved out of the passenger side mirror the defendant Coleman Strachan was approximately 50 to 100 feet from us still moving at a high rate of speed.

19. I then could see a van with a uhaul attached behind us about 4 cars back trying to maneuver from the right lane we were in to the left lane to avoid contact from the defendant Coleman Strachan 18 wheeler with a trailer attached.

20. I then seen heavy smoke coming from the defendant Coleman Strachan 18 wheeler tires.

21. Aproximately (5) five second later I seen the defendant Coleman Strachan front of his 18 wheeler make impact with the back of the van and attached trailer.

4

22. I then seen the van immediately went airborne.

### (1st) First-Direct impact to the F-150 Plaintiff was a passeger in.

23. The defendant Coleman Strachan impact to the back of the van, caused the van to travel three car length airborne landing upside down on the back of the white Chev truck bed that was directly to the left of the F-150 plaintiff was a passenger in.

24. The impact form the van landing on the back of the bed of the Chev truck directly, caused the Chev truck and the van both to slam into the left driver-side rear of the F-150 plaintiff was a passenger in.

25. The direct impact of the Chev truck and van was aporximately 3/4 of the way from the back left door and rear bumper of the F-150 plaintiff was a passenger in.

26. The direct impact of both the Chev truck and van to the F-150 rear left side that plaintiff was a passenger in; lifted both of its rear tires off the ground approximately (2) two feet high and forcing it to move to the right approximately (3) three to (4) four feet.

27. The direct impact of both the Chev truck and van to the F-150 rear left side that plaintiff was a passenger in caused the plaintiff body to fly uncontrollably and forcefully to the left.

28. I Gregory Peet, did observe the following as to what happened to my son J. Y. P., caused by the defendents impacting the van sending it airborne.

29. As I, Gregory was being abruptly and uncontrollably thrown to the left-side of the vehicle do to the impact of the chev and van stricken the left-side rear of our vehicle.

30. I Gregory Peet, did observe the following as to what happened to my son J. Y P

caused by the defendents impacting the van sending it airborne .

31. As I Gregory was being abruptly and uncontrollably thrown to the left-side of the

vehicle do to the impact of the chev and van stricken the left-side rear of our vehicle. I

could hear my son J. Y. P. yelling and crying help me, mom help me I'm scared.


### (2nd) Second-Direct impact to the F-150 Plaintiff was a passeger in.


32. Appromiately fifteen second latter as the defendant Coleman Strachan 18 wheeler

with a trailer attached he was driving continued  forcibly moving forward throughout the

crowd of stopped vehicles directly behind the F-150 plantiff was a passenger in,

uncontrollably with catastrophically devastation affect to plaintiffs live and person caused

the stopped vehicles to pushed forward making a direct impact to the rear end of the

F-150 the plaintiff's was a passenger in.

33. The F-150 the plaintiff was a passenger in then sustain its (2nd) second impact direct

hit from the rear.

34. This second impact caused by the defendant Coleman Starchan 18 Wheeler pushing

the crowd of vehicles directly behind the F-150 the plaintiff  was a passenger in, caused

the plaintiff's entire body to be forcefully thrown backwards.

35.  I, Gregory Peet, did observe the following as to what happened to my son J. Y. P.

caused by the defendents impacting the other vehicles parked behind and beside use

causing them to rear-end us.

36. I, Gregory head and 185 pounds body was forcefully thrown backwards stricken J. Y. P.'s head, chest, and abdominal areas. J. Y. P. nose and mouth immediately begins to bleed and swell.

37. J. Y. P.'s head immediately developed a golf ball size goose-eggs in the middle of the forehead area were the back of Gregory head made direct contact. J. Y. P. was yelling help me i'm hurting and struggling too breathe.

.

### (3rd) Third-Direct impact to the F-150 Plaintiff was a passeger in.

38. Approximately ten second latter as the defendent Coleman Strachan 18 wheeler with an attached trailer was still plowing forcibly forward throughout the crowd of stopped vehicles uncontrollable; with catastrophically domino affect to our live's and person's.

39. The other vehicles beind us, were still forcefully being pushed forawrd uncontrollably by the defendents Coleman Strachan 18 wheeler with an attached trailer causing a chain reaction. As such direct resulted in a forcefully direct-contact to the rear of the F-150 that plaintiff was a passenger in.

40. This rear-impact forcing the F-150 that plaintiff was a passenger in to catapult forward forcing it to make a direct-impact into the rear of the vehicles directly stopped in front of it pushing the sandwiched crowed forward approximately eight feet off to the

right of the lane. The F-150 that plaintiff was a passenger in then assuming its third

brutality direct-impact to the front-end.

41. J. Y. P. was still secured in his car seat yelling and crying uncontrollably for help.


### (4th) Fourth-Direct impact to the F-150 Plaintiff was a passeger in.


42. Approximately ten to fifteen second latter as the defendent Coleman Strachan 18

wheeler with a trailer attached along with and full-size SUV trapped underneath it's front

tires; continued to plow forcibly forward throughout the crowd of stopped vehicles

uncontrollable; with catastrophically domino affect to our live's and person's.

43. The defendents Coleman Strachan 18 wheeler with a trailer attached  along with a

full-size SUV trapped underneath the front tires then made a second direct-impact to the

rear-right corner passenger-side of  the F-150 that plaintiff was a passenger in, point of

contact was rear-right tail light assembly, mid bumper and right quarter panel areas.

44. This horrendously double-direct-impact  to the rear of our F-150 that the plaintiff was

a passenger in inflicted by the defendents vehicle and the trapped SUV, caused the F-150

that plaintiff was a passenger in to catapulted forward abruptly-uncontrollably forward

from a dead stop to a rate of  approximately 50 miles per hour directly toward the right

toward the ditch.

45. J. Y. P. was still secured in his car seat yelling and crying uncontrollably for help.

**(5th) Fiffth-Direct impact to the F-150 Plaintiff was a passeger in.**

46. Simultaneously and/or after the F-150 that plaintiff was a passenger in had traveled approximately (15 ft. to 20 ft. ), another vehicle that was ran over by the defendents Coleman Strachan 18 wheeler with a trailer attached and knock on to the right shoulder was traveling to the left uncontrollably made a direct-impact to the right-side of the F-150 that plaintiff was a passenger in.

47. Point of impack was from the right-side rear-view mirror area, impacting down all alone the entire right side of the F-150 that plaintiff was a passenger in. This impack caused the out of control F-150 that plaintiff was a passenger in to run off the right-side of the road down and embankment and stalling out.

48. J. Y. P. was still secured in his car seat yelling and crying uncontrollably for help.

## IV

## Statement of Claims

## COUNT  I

## Respondeat Superior and Vicarious Liability-Common Law Negligence Against Defendants A2B CARGO LOGISTICS, INC., A2B CARGO INC., AND COLEMAN STRACHAN

49. Plaintiff re-alleges the allegations contained in paragraphs one (1) through forty-eight (48) above as if though fully set forth herein..

50. At all times herein relevant,  Defendant, A2B CARGO LOGISTICS, INC. (LOGISTICS) was and is a Federal Motor Carrier Safety Administration (FMCSA) authorized interstate freight shipping broker conducting its business under US DOT # 3187256 throughout Illinois and the United States.

51. At all times herein relevant, Defendant, A2B CARGO, INC. (CARGO) was and is an FMCSA Interstate Motor Carrier operating and conducting an interstate commercial business of transporting freight throughout Illinois and the United States under USDOT # 2579900.

52. At all times herein relevant, Defendants, LOGISTICS and CARGO, acted together in joint venture with each other both, as principal and agent for each other in their joint venture of brokering and transporting commercial freight throughout the United States.

53. At all times herein relevant, Defendant, COLEMAN STRACHAN, was employed by Defendants as a driver of their 2015 Freightliner Tractor Trailer bearing Illinois registration P1026569 and acted as an employee and agent on behalf of each Defendant, LOGISTICS and CARGO, as well as their joint venture of brokering and transporting commercial freight interstate throughout Illinois and the United States.

54. At all times herein relevant, Defendant driver, COLEMAN STRACHAN, was hired, qualified, supervised, trained, dispatched and directed by Defendants, LOGISTICS and CARGO.

55. At all times herein relevant, Defendant, COLEMAN STRACHAN, was operating a commercial motor vehicle in interstate commerce under the direction and control of Defendants, LOGISTICS and CARGO.

56. At all times herein relevant Defendant, COLEMAN STRACHAN (driver), was acting within the course and scope of his employment by, Defendants, LOGISTICS and CARGO. Therefore his negligent actions and omissions, as alleged herein, were the actions and omissions of Defendants, LOGISTICS and CARGO, under the doctrines of *Repondent Superior and Vicarious Liability*.

57. On June 28, 2019, Plaintiffs', was a passenger in a motor vehicle headed eastbound on US 24 near mile marker 51.75 in Kuttawa, Kentucky.

58. At the above-mentioned time and place the commercial vehicle operated by Defendant, COLEMAN STRACHAN, for his employers, Defendants, LOGISTICS and CARGO was eastbound on US 24 near mile marker 51.75 in Kuttawa, Kentucky behind the vehicle occupied by Plaintiff.

59. At the above-mentioned time and place the vehicle occupied by Plaintiff, stopped for traffic ahead of it on US 24 near mile marker 51.75.

60. As Defendant Strachan was traveling eastbound in the righthand lane on Interstate 24, he failed to observe traffic ahead that was completely stopped, and failed to yield to the stopped traffic in front of him, causing him to crash into the rear of a church van directly in front of him setting off a chain re-action of crashs of eleven (11) eastbound vehicles all stopped in traffic due to road construction one was occupied by Plaintiff.

61. Defendant Strachan operated the 2015 Freightliner tractor-trailer in a negligent, careless, and reckless manner, causing serious injuries to plaintiff, for which Defendants

A2B Cargo Logistics Inc., and A2B Cargo Inc., is *vicariously liable*.

62. At all times herein relevant, Defendants, LOGISTICS and CARGO, were operating a fleet of Motor vehicles, trucks and other vehicles jointly as a broker and Motor carrier as defined by the Federal Motor Carrier Safety Regulations (FMCSR) throughout the United States.

63. At all times herein relevant, Defendants, LOGISTICS and CARGO, and their Driver, Defendant, COLEMAN STRACHAN, operated under authority granted by the United States Department of Transportation (DOT) under their respective DOT licenses.

64. 49 C.F.R. § 390.3(e) (l) & (2) provide that every driver and employee shall be instructed regarding and shall comply with all applicable regulations contained in the FMCSR.

65. 49 C.F.R. § 390.4 provides that "motor carrier" means a for-hire Motor carrier or a private motor carrier which includes a motor carrier's agents, officers, and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers.

66. 49 CFR § 3 71.2 (a): provides that " Broker" means a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier. ... All brokers regulated by FMC SA are required to use the services of authorized motor carriers.

67. Defendants, LOGISTICS and CARGO, were at all material times a ·'broker", "motor carrier" and an "employer" of their driver, Defendant, COLEMAN STRACHAN, as defined in 49 C.F.R. §382.107.

68. 49 U.S.C. § 14704 (a) (2) provides that "A carrier ... is liable for damages sustained by a person as a result of an action or omission of that carrier. .. in violation of this part."

69. 49 U.S.C. § l4l01 (a) provides that "a motor carrier shall provide safe and adequate service, equipment and facilities." Defendants, LOGISTICS and CARGO, and their driver, Defendant, COLEMAN STRACHAN, negligently and wantonly failed to provide safe and adequate service which proximately caused painful injuries and damages to Plaintiff.

70. The FMCSR can be found at 49 C.F.R. § 390 et seq. The FMCSR and the MCA, specifically, under the section 40 C.F.R. § 391.1 (a) states "(a) The rules in this part establish minimum qualifications for persons who drive commercial motor vehicles, as for, or on behalf of motor carriers. The rules in this part also establish minimum duties of motor carriers with respect to the qualification of drivers. The FMCSR set forth the applicable minimum industry standard of care including the minimum qualifications for drivers and the minimum duties for drivers under 49 C.F.R. § 391.1 (a) & (b).

71. The Plaintiff attaches and incorporates Exhibits (A) which establishes that Defendants, LOGISTICS and CARGO, have a habit, custom and pattern of business activity of failing to comply with the BASICs and FMCSRs under the guidelines and regulations adopted and implemented by the DOT and their administrative branch, the Federal Motor Carrier Safety Administration (FMCSA) under the code of federal regulations.

72. Exhibit A establishes a serious history and on going pattern of Unsafe Driving, Hours-of-Service compliance issues, and Vehicle Maintenance issues exemplified as follows:

a.) Commencing December 28, 2015 Defendants received a safety "Alert" notification which rated them in the bottom 10% of all licensed interstate Motor carriers operating in the U.S.A. for unsafe driving; (page 1 of 92)

b.) On January 29, 2016 Defendants received another safety "Alert" for unsafe driving. Their unsafe driving rating had dropped to the bottom 6% of all licensed interstate Motor carriers;  (pages 1-2 of 92)

c.) On February 26, 2016 Defendants received another safety "Alert" for unsafe driving. Their unsafe driving rating dropped further to the bottom 4% of all licensed interstate Motor carriers; (pages 1-2 of 92)

d.) On March 25, 2016 Defendants received another safety "Alert" for unsafe driving. Their unsafe driving rating remained at the bottom 4% of all licensed interstate Motor carriers;        (pages 1-2 of 92)

e.) By May 27, 2016 Defendants had received consecutive monthly safety alerts for unsafe driving and additionally received a safety "Alert" for Hours of service compliance (HOS) violations: (pages 1-2, 17 of 92)

f.) These consecutive safety "Alert" notifications for both unsafe driving and hours of service compliance (HOS) violations were issued monthly to Defendants up to June 28, 2019 the date of the subject crash; (pages 1- 92)

g.) Additionally, by January 26, 2018 Defendants' crash rate increased and they received an additional safety "Alert" for their crash indicator as well as their unsafe driving record and their (HOS) hours of service violations; (pages 1- 92)

h.) Commencing May 25, 2018 and continuing to June 28, 20 19 Defendants also received consecutive monthly safety "Alerts" in four categories Unsafe driving, Hours of Service compliance violations, Vehicle maintenance and Crash indicator; (pages 1- 92)

i.) A four year summary included in Exhibit A demonstrates an increasing yearly crash rate from 2016 to the present that has averaged 5.7 crashes; (pages 1- 92)

j.) As demonstrated by this exhibit, throughout this period of time despite receiving numerous consecutive safety "Alerts" Defendants took no measures to correct their operating practices or to improve their safety record. (See Attaced Exhibits - A, B, and C).

73. This record of FMCSR and BASICs safety violations by Defendants demonstrates

an ongoing pattern of unsafe operation by Defendants, individually and by their joint

14

venture in conducting their business as an interstate Motor carrier.

74. As a direct and proximate result of the gross neglience and carelesness of Defendants Strachan, A2B Cargo Logistics Inc., and A2B Cargo Inc., the Plaintiff, sustained temporary and permanent injuries to his body, causing great physical pain, mental pain and anguish including the loss of enjoyment of life and , J. Y. P., will continue to suffer such damages in the future, as his injuries are permanent in nature, and incurred large sums of money for physicians and medical expenses in treatment, and is at the increased likelihood of future complcations due to the severity and permanent nature of his injuries.

### COUNT II

### NEGLIGENCE *PER SE* AGAINST DEFENDANT'S, A2B CARGO LOGISTICS, INC., A2B CARGO INC., AND COLEMAN STRACHAN

75. Plaintiff re-alleges the allegations contained in paragraphs one (1)  through seventy-four (74) above as if though fully set forth herein.

76. Defendat Coleman Strachan violated state and federal statutes and regulations, including but not limited to **KRS 189.290, KRS189.330, KRS 189.338, KRS 189.390, , 601 KAR 1.005 and 49 C.F.R 350-399,** which were promulgated to protect the safety of a class of people that includes Plaintiff, and constitutes negligence *per se* pursuant to **KRS 446.070** and Kentucky case law, for which Defendats A2B Cargo Logistics Inc., and A2B Cargo Inc., is *vicariously liable.*

77. The injuries sustained by Plaintiff are of the type which these statutes seek to prevent

and that such injuries were proximately caused by Defendant Coleman Strachan's

violation of these statutes, for which Defendats A2B Cargo Logistics Inc., and A2B

Cargo Inc., is *vicariously liable*.

78. As a direct and proximate result of the gross neglience and carelesness of Defendants

Coleman Strachan, A2B Cargo Logistics Inc., and A2B Cargo Inc., the Plaintiff,

sustained temporary and permanent injuries to his body, causing great physical pain,

mental pain and anguish including the loss of enjoyment of life, and J. Y. P., will

continue to suffer such damages in the future, as his injuries are permanent in nature, and

incurred large sums of money for physicians and medical expenses in treatment, and is at

the increased likelihood of future complcations due to the severity and permanent nature

of his injuries.

## COUNT III

### THE FEDERAL MOTOR CARRIER SAFETY REGULATIONS VIOLATION OF STANDARD OF CARE, LACK OF CARE, RECKLESS AND WANTON CONDUCT AGAINST DEFENDANT'S, A2B CARGO LOGISTICS, INC., A2B CARGO INC., AND COLEMAN STRACHAN

79. Plaintiff re-alleges the allegations contained in paragraphs one (1)  through seventy-

eight (78) above as if though fully set forth herein.

80. The allegations contained in this Complaint regarding the Federal Motor Carrier

Safety Regulations (FMCSR) establish that Defendants, LOGISTICS, CARGO and

COLEMAN strachan, did not comply with the industry standard of care and

the minimum standards of care described under the FMCSR to establish the negligence

of Defendants and are not brought to allege a private cause of action for violation of the

FMC SR .

81. The negligent actions and omissions of Defendant, COLEMAN STRACIIMAN, are

the acts and omissions of his employer, Defendants. LOGISTICS and CARGO, under the

doctrines of *Respondents Superior and Vicarious Liability* and, upon information and

belief are negligent, careless, and wanton and include, but are not limited to:

A.) Following too closely;

B.) Inattentive operation of a commercial Motor vehicle on a public highway;

C.) Recklessly swerving a commercial vehicle from lane to lane on a public highway;

D.) Failure to stop or slow when traffic conditions made driving forward hazardous;

E.) Failure to maintain proper control of a commercial tracfor trailer;

F.) Driving at a speed in excess of what was reasonable for existing traffic conditions;

G.) Using a hand held cell phone while operating a commercial vehicle at highway

speed in traffic on the roadway;

H.) Failure to keep a proper lookout for slowing or stopped traftlc ahead;

I.) Operation of a commercial Motor vehicle while dangerously fatigued;

J.) Failure to exercise ordinary and reasonable care in the maintenance of the

mechanical condition of commercial vehicle;

K.) Failure to monitor for road construction ahead:

L.) Failure to take evasive action by driving to the right onto the roadway shoulder;

M.) Failure to keep a commercial vehicle in a single lane on the roadway;

N.) Failure to load or maintain a commercial vehicle properly so as to cause it to be unstable when operated on the highway;

0.) For failing to meet the minimum duties and industry standards of care set forth under 49 C.F .R. §§ 381 through 399;

P.) For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 392.3 by operation of a commercial Motor vehicle while the driver's ability or alertness is impaired;

Q.) For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 39l.ll(a) by operation of a commercial Motor vehicle when the driver is not properly qualified pursuant to this regulation;

R.) For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 383.113 by operating a fleet vehicle and commercial Motor vehicle when the driver does not possess and demonstrate the safe driving skills required by this regulation;

S.) For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 383.111 by operating a fleet vehicle and commercial Motor vehicle without having sufficient basic knowledge of safe operating regulations, including the effects of fatigue, safety systems knowledge, basic knowledge of basic control maneuvers, and basic information on hazard perception and when and how to make emergency maneuvers;

T.) For failing to meet the minimum duties and industry standards of care set forth

18

under 49 C.F.R. § 383.110 by operation of a fleet vehicle and commercial Motor

vehicle without the knowledge and skills necessary to operate the same safely;

U.) For failing to meet the minimum duties and industry standards set forth under

49 C.F.R. § 390.11 by failing to observe and follow the FMCSR;

V.) For failing to meet the minimum duties and industry standards of care set forth

under 49 C.F.R. § 383.110,49 C.F.R. § 383.112, 49C.F.R. 383.113 by failing to

have an adequate safety management controls in place that would require and

provide that the driver had the required skills safety management controls required

under this regulation;

W.) Upon information and belief using a cellular phone device, wireless

communication device or other PDA device while operating a Motor vehicle

and talking, texting or looking at GPS directions, thereby violating K.S.A. 8-

15,111 and causing Defendant driver to be distracted;

X.) Upon information and belief Defendant, Driver, did not discontinue operation

of the Commercial Motor Vehicle due to on-time requirements and penalties

imposed by his employer, Defendants, LOGISTICS and CARGO; and

Y.) For other actions and omissions that will be supplemented after the receipt of full

and complete discovery in this case.

82. As a direct and proximate result of the gross negligence and carelesness of Defendants

Coleman Strachan, A2B Cargo Logistics Inc., and A2B Cargo Inc., the Plaintiff,

sustained temporary and permanent injuries to his body, causing great physical pain,

mental pain and anguish including the loss of enjoyment of life and J. Y. P., will continue

to suffer such damages in the future, as his injuries are permanent in nature, and incurred

large sums of money for physicians and medical expenses in treatment, and is at the increased likelihood of future complcations due to the severity and permanent nature of his injuries.

## COUNT IV

### NEGLIGENCE IN HIRING, TRAINING, SUPERVISION, AND ENTRUSTMENT CLAIMS AGAINST DEFENDANT'S, A2B CARGO LOGISTICS, INC., A2B CARGO INC., AND COLEMAN STRACHAN

83. Plaintiff re-alleges the allegations contained in paragraphs one (1)  through seventy-nine (82) above as if though fully set forth herein.

84. Defendants A2B Cargo Logistics Inc., and A2B Cargo Inc., had a duty to act reasonably in hiring, instructing, training, supervising and retaining its drivers and other employees and agents, including Defendant Coleman Strachan, and to promulgate and enforce policies, procedures, and rules to ensure that its driver and vehicles were reasonably safe.

85. Defendants A2B Cargo Logistics Inc., and A2B Cargo Inc., had a duty to exercise reasonable care in entrusting its vehicles and equipment to responsible, competent, and qualified drivers.

86. Defendants A2B Cargo Logistics Inc., and A2B Cargo Inc., was negligent, careless and reckless with regard to the duties set forth above, causing serious injurys to Plaintiff, for which it is directly liable.

87. Defendants A2B Cargo Logistics Inc., and A2B Cargo Inc., violated state and federal

statutes and regulations, including but not limited to KRS 189.224, 601 KAR 1:005 and

49 C.F.R. 350-399, which were promulgated to protect the safety of a class of people that

includes Plaintiff, and constitues negligence *pre se* pursuant to KRS 446.070 and

Kentucky case law, for which it is directly liable.

88. Upon information and belief, Defendants, LOGISTICS and CARGO, were

 negligent, careless, wanton and reckless for failing to meet the minimum duties and

industry standards of care set forth under 49 C.F.R. § 391.11 and 49 C.F.R. § 391.21,

 49 C.F.R. § 391.23 by failing to make appropriate investigation and inquiries of the

driver's background in the prior ten (10) year period and by failing to obtain the federally

required information on the application for employment of their driver with appropriate

ten (10) year background checks, criminal history checks and obtaining actual responses

 from prior employers;

89. Upon infonnation and belief, Defendants, LOGISTICS and CARGO, were negligent

 for failing to terminate, suspend, reprimand or retrain their driver in defensive driving,

 hazard perception techniques, accident awareness techniques, appropriate cushion

understanding and.

90. Upon information and belief, Defendants, LOGISTICS and CARGO, were negligent

for failing to retrain their driver in defensive driving skills, hazard perception skills and

accident avoidance techniques;

91. Defendants, LOGISTICS and CARGO, were negligent, careless, wanton and reckless

for failing to conduct a post-accident preventability study in order to comply with DOT,

FMCSA and the mandates of the DOT and FMCSA that Motor carriers study accident

preventability to prevent further accidents, injuries to the Motoring public; Defendant,

LOGISTICS and CARGO, were negligent, careless, wanton and reckless for failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 391.31 by tailing to road test its driver properly;

92. Defendant, LOGISTICS and CARGO's, actions and omissions in hiring its driver, establish negligent hiring, retention, supervision, and training of the driver and supervisory managers above the driver;

93. Defendant, LOGISTICS and CARGO, and its respective agents, employees and representatives were careless, negligent and wanton for negligent hiring, training, supervision, and retention of Defendant driver, COLEMAN STRACHAN, and his supervisory personnel.

94. Defendant, LOGISTICS and CARGO, negligently and/or wantonly hired unfit employees and agents and then failed to train, supervise, and monitor them properly and additionally retained employees and agents that were not performing their jobs properly or adequately. This includes, but is not limited to, Defendant driver, COLEMAN STRACHAN, and his supervisory personnel.

95. Defendant, LOGISTICS and CARGO, had a duty to use reasonable care in selecting and retaining their employees, agents, and independent contractors, and was negligent in hiring, selection, training, monitoring and retaining their employees, agents, and independent contractors, including, but not limited to its driver.

96. Defendant, LOGISTICS and CARGO, negligently and wantonly failed to use reasonable care in the hiring, selecting, training, monitoring, and retention of their employees and agents, including, but not limited to driver.

97. Defendant, LOGISTICS and CARGO, knew or reasonably should have known that

it was not hiring safe and competent employees and agents and negligently and wantonly

violated their duty to hire only safe and competent employees.

98. Defendant, LOGISTICS and CARGO, knew or reasonably should have known that its

emloyees and agents, including, but not limited to its driver, created an undue risk of

harm to the Plaintiff, and negligently and wantonly failed to reprimand, retrain, or

terminat its employees, agents, and independent contractors, including Defendant driver,

COLEMAN STRACHAN, and his supervisory personnel.

99. Defendants, LOGISTICS and CARGO's negligence in hiring, training, monitoring,

supervision, and retention of unsafe and incompetent employees, agents, and independent

contractors including the driver and his supervisory personnel proximately caused the

injuries, pain and wrongful suffering of Plaintiff.

100. Defendants, LOGISTICS and CARGO, failed to have adequate safety protocols in

place.

101. Defendants, LOGISTICS and CARGO, failed to create and implement a proper

satety program that would require their driver to be adequately tested in written form to

determine that he has appropriate defensive driving skills;

102. As a direct and proximate result of the gross neglience and carelesness of

Defendants Coleman Strachan, A2B Cargo Logistics Inc., and A2B Cargo Inc., the

Plaintiff, sustained temporary and permanent injuries to his body, causing great physical

pain, mental pain and anguish including the loss of enjoyment of life and J. Y. P., will

continue to suffer such damages in the future, as his injuries are permanent in nature, and

incurred large sums of money for physicians and medical expenses in treatment, and is at

the increased likelihood of future complcations due to the severity and permanent nature of his injuries.

## COUNT V

### PUNNITIVE DAMAGES AGAINST DEFENDANT(S) COLEMAN STRACHAN, A2B CARGO LOGISTICS INC., AND A2B CARGO INC.

103. Plaintiff re-alleges the allegations contained in paragraphs one (1) through one hundred-two (102) above as if though fully set forth herein.

104. As a proximate result of the negligence and carelessness of Defendants, LOGISTICS and CARGO and COLEMAN strachan, as aforesaid, Plaintiff, suffered painful, catastrophic injuries to his body, mind and soul severely caused permanently disfiguration; and was otherwise injured and damaged. He suffered extreme conscious pain. A claim is hereby presented for, J. Y. P., injury's to his person  and damages, suffered emotionally, physically and mentally. Plaintitff has been damaged in an amount in excess of  $500,000.00 Five Hundred Thousand dollars.

105. Defendants Coleman Strachan, A2B Cargo Logistics Inc., and A2B Cargo Inc., acted recklessly, wantonly and/or with extreme indifference or reckless disregard for the consequences of their actions as well as exhibiting a reckless disregard for life, safety and health of others, including Plaintiff, warranting the imposition of punitive damages pursuant to KRS 411.184 and 411.186. Furthermore, punitive damages are supported by Kentucky's declaration that tractor trailers endager the lives and safety of the traveling public, which includes Plaintiff, pursuant to KRS 189.670, which states:

*It is hereby declared to be the public policy of this state that heavy motor trucks, alone or in combination with other vehicles, increase the cost of highway construction and maintenance, interfere with and limit the use of highways for normal traffic thereon, and endanger the safety and lives of the traveling public, and that the regulations embodied in this chapter with respect to motor trucks, semitrailer trucks and semitrailers are necessary to achieve economy in highway costs, and to permit the highways to be used freely and safely by the traveling public.*

106. Defendants Coleman Strachan, A2B Cargo Logistics Inc., and A2B Cargo Inc., acted recklessly, wantonly and/or with extreme indifference or reckless disregard for the consequences of their actions as well as exhibiting a reckless disregard for life, safety and health of others, including Plaintiff, as set forth above, so as to warrant the imposition of punitive damages.

107. The imposition of punitive damages is neccessary to serve as a deterrent effect to Defendants Coleman Strachan, A2B Cargo Logistics Inc., and A2B Cargo Inc., and all others similarly situated.

## COUNT VI

### PLAINTIFF'S MEDICAL EXPENSES,  CLAIMS AGAINTS DEFENDANT(S)  COLEMAN STRACHAN, A2B CARGO LOGISTICS INC., AND A2B CARGO  INC.

108. Plaintiff re-alleges the allegations contained in paragraphs one (1) through one hundred-seven (107) above as if though fully set forth herein.

109. A claim is also presented for the medical expenses of  J. Y. P., under fedral laws. This claim includes, but is not limited to: both past and future mental anguish, suffering,

26

or, advice or surgery or hospital bills prescription medication mental counseling or counsel; loss of filial care or attention; loss of care, training, guidance or education; and expenses of Plaintiffs. These damages are in excess of ($575,000.00).

110. The collision referred to in the Plaintiff's statement of facts that happened on June 28, 2019 was the result of the negligence and negligence *pre se* of the Defendant(s) Coleman Strachan, A2B Cargo Logistics Inc., and A2B Cargo Inc.,.

111. As the result of the negligence and negligence *pre se* of the Defendant(s) Coleman Strachan, A2B Cargo Logistics Inc., and A2B Cargo Inc., the Plaintiff suffered severe and permanent injuries.

112. As the direct result of Plaintiff's severe and permanent injuries and as a direct result of the June 28, 2019 collision, he have incurred reasonable and necessary medical and related expenses, and to the future will incur additional reasonable and necessary medical expenses, have endured physical pain and mental suffering, and in the future will endure additional physical pain and mental suffering, all to his damage in amount of $575,000.00 for medical past and future.

**WHEREFORE**, Plaintiff, J. Y. P., , pray for judgment against Defendants, LOGISTICS and CARGO and COLEMAN strachan, for all damages allowed under Federal and State law as actual compensatory damages in an amount in excess of (1,075,000.00), one million seventy five thousand dollars for costs herein and for such other and further relief as the Court deems just and equitable.

**DEMAND FOR DISCOVERY CONFERENCE, SCHEDULING CONFERENCE, PRETRIAL CONFERENCE AND .JURY TRIAL**

COME NOW Plaintiffs and demand the following:

1) An immediate discovery conference to obtain a scheduling order and trial date;

2) A pretrial conference date;

3) A trial by jury of no less than twelve (12) of his peers in this matter.

---

## Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.


## Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case related papers may be served. I understand that my failure to keep current

address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _06/09_ , 20_21_

Signature of Plaintiff by Gregory Peet

27

---

Printed Name of Plaintiff by Gregory

Peet

J. Y. P.,
311 Lee Avenue
Sikeston, Missouri 63801

Peety5252@gmail.com

573-270-6081